UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In re<br><br>MARIA V. PIRES,<br><br>     Debtor | Chapter 13<br>Case No. 09-18708-FJB |
|---|---|

**MEMORANDUM OF DECISION ON
THE BANK OF NEW YORK MELLON'S OBJECTION
TO CONFIRMATION OF FIRST AMENDED CHAPTER 13 PLAN**

  This matter came before the Court on the objection of The Bank of New York Mellon, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-J1 Mortgage Pass-Through Certificates, Series 2006-J1 (the "Creditor"), to confirmation of the First Amended Chapter 13 plan (the "Objection") filed by Debtor Maria V. Pires (the "Debtor"). The Debtor filed her Chapter 13 petition on September 11, 2009 and then filed a First Amended Chapter 13 Plan on October 22, 2009. It is this First Amended Plan that is the subject of the Objection. For the reasons set forth below, the Court sustains the Objection.[1]

  The Creditor holds a fixed-rate note secured by a mortgage on a multifamily dwelling located at 26 Everett Street, Somerville, Massachusetts (the "Property").[2] The Debtor occupies one of the apartments as her primary residence. Her First Amended Chapter 13 Plan proposes to pay all prepetition arrears owed on the secured claim through the plan, to bifurcate the subject mortgage held by the Creditor, and to provide a one percent (1%) dividend to general unsecured creditors.[3] The Creditor does not dispute that this mortgage may be modified under

---

 [1] On February 8, 2010, the Creditor filed, with the present Objection, a motion for leave to file the Objection late. After a hearing, the Court allowed that motion.

 [2] The plan makes no mention of any mortgage or secured claim in favor of the Creditor, Bank of New York Mellon. However, it is undisputed that the Creditor is the holder of the first mortgage on the property located at 26 Everett Street and the note it secures, which claim the plan attributes variously to BAC Home Lending/Countrywide, MERS and Countrywide Home Loans.

 [3] The secured claim of this Creditor is not the only secured claim that the Debtor proposes to bifurcate through the plan. The Debtor also owns a second property located at 72 Rush Street, Somerville, Massachusetts that has a first mortgage serviced by America's Servicing Company for U.S.

11 U.S.C. § 1322(b)(2).  Nor does the Creditor dispute that the fair market value of the property is $460,000, as the Debtor alleges, or that the Debtor's plan may modify and bifurcate the claim under 11 U.S.C. § 506(a).[4]  The Creditor filed a timely proof of claim to which no objection has been filed by the Debtor.[5]

The Creditor presents three separate objections to the Debtor's proposed plan.  First, the Creditor objects on the basis that the Creditor is unable to determine the proposed treatment of its secured claim from the four corners of the plan; the plan is vague and self-contradictory.  Second, the Creditor points out that the proposed plan is a so-called hybrid plan.[6]  The Creditor argues that even if hybrid plans are permissible in general—the Creditor argues they are not—the Debtor's proposed hybrid treatment of the Creditor's claim does not comply with the case law that governs and permits such plans because it purports to modify both the monthly mortgage payments and the interest rate.  Thus the plan does not maintain the contractually due mortgage payment and interest rate, which the Creditor argues is required in such plans.  Finally, as noted, the Creditor objects generally to the *McGregor*-type hybrid plan, arguing that their treatment of secured claims that is typical of these plans does not comply with 11 U.S.C. §§ 1325(a)(5)(B)(ii) and 1322(d).

The Debtor counters that the language of the proposed plan is clear and concise.  She

---

Bank N.A..  The Debtor's objective is to retain the two properties by paying prepetition arrears on both mortgages through the plan and bifurcating the secured claims.  There appears to be a small Internal Revenue Service claim as well, but the Debtor's primary objective in the plan is to cramdown each of the first mortgages.  Only the mortgage held by the The Bank of New York Mellon is at issue in this objection.

[4] The Debtor filed a motion to determine secured status of the mortgage which is pending before the Court.  No objection has been filed by the Creditor to that motion.

[5] The Creditor's proof of claim indicates a total balance due of $533,583.39 on the note with pre-petition arrears in the amount of $20,125.24.

[6] The Creditor is referring to the *McGregor* line of cases in the First Circuit.  These cases permit a debtor to modify and bifurcate a secured creditor's claim and pay off the secured portion of the claim beyond the length of the term of the Chapter 13 plan, provided the monthly payments received by the mortgage holder comply with the contractual terms of the underlying note and mortgage.  *See In re McGregor*, 172 B.R. 718 (Bankr. D. Mass. 1994); *In re Brown*, 175 B.R. 129 (Bankr. D. Mass. 1994); *In re Murphy*, 175 B.R. 134 (Bankr. D. Mass. 1994); and *In re Veliz*, 2009 Bankr. LEXIS 3505 (Bankr. D. R.I. 2009).

2

also argues that there is no requirement in 11 U.S.C. § 1322(b)(5) that the "maintenance of the payments" be at the contract rate of interest amortized on the entire claim, despite the fact that the claim is being bifurcated pursuant to 11 U.S.C. § 506(a).  The Debtor suggests that the plan may be confirmed provided the secured claim is paid at an interest rate that takes into account the factors set forth in *Till v. SCS Credit Corporation*, 541 U.S. 465, 124 S.Ct. 1951 (2004).  Because the Court finds that the plan is vague and internally inconsistent in its treatment of the Creditor's claim, the Court sustains the objection.  There is no need to address the other reasons stated in support of the Objection.

**Discussion**

The Court agrees with the Creditor that the language in the proposed amended Chapter 13 plan is vague and contradictory.   First, it is unclear what the Debtor proposes to include as the total amount of the secured portion of the Creditor's bifurcated claim.  In Section I, Part A of the plan, the Debtor proposes to cure the contractual prepetition arrearage of $20,125 through the plan.  In Section I, Part B, the Debtor indicates that she intends to pay the Creditor's total secured claim in the amount of $444,000 "not through the plan," *i.e*, by payments made directly to the Creditor and not through the chapter 13 trustee.  Then in the "Notes" portion of Section I, Part B, the Debtor indicates that the plan proposes to bifurcate the secured claim of the Creditor, that the Property has a fair market value of $460,000, and that the secured claim of the Creditor shall be crammed down to that proposed fair market value.[7]  When examining these

---

[7]  The "Notes" portion of the Debtor's plan states:

> The Debtor has filed a Motion for Determination of Secured Status Under 11 U.S.C. § 506 of the Interest of American Brokers Conduit/BAC Home Loans LP-Countrywide/Mortgage Electronic Registration Systems, Inc. As it Relates to the Value and Secured Interest in the Real Property Located at 26 Everett Avenue, Somerville, Massachusetts.  The Debtor asserts that the fair market value of the property is four hundred sixty thousand ($460,000.00) dollars and therefore, the secured interest of the first mortgagee is four hundred sixty thousand ($460,000.00).  If the Debtor prevails, the treatment under this Plan shall be that the Debtor shall pay the sum of twenty thousand one hundred twenty-five

3

sections together, at least three possible interpretations emerge.  In the first, the Debtor intends to add all, or some unstated portion, of the prepetition arrears from Section I, Part A to the amount she intends to pay outside of the plan from Section I, Part B, resulting in a total payment to the Creditor of approximately $464,125.  In the second, the Debtor proposes to pay a total of $460,000 on the Creditor's secured claim, including any prepetition arrears, as stated in the "Notes" portion of Section I, Part B.  In the third, the Debtor intends to pay the prepetition arrears from Section I, Part A in addition to the proposed secured claim of $460,000 from the "Notes" in Section I, Part B.  Given the current language in the plan, any one of these interpretations is plausible.  In order for a creditor to understand and have a fair opportunity to respond to the treatment of its claim, and in order for a court to determine whether the proposed treatment of a claim complies with the Bankruptcy Code, the proposed treatment must be set forth clearly and without ambiguity.  *In re Woods*, 406 B.R. 293, 298 (Bankr. N.D. Ohio 2009) ("Language in a plan, purporting to impair a creditor's claim, must be stated in clear and unambiguous terms.").  Anything that yields multiple interpretations is not clear.

The plan is also unduly vague in one other way.  The plan fails to set out clearly the interest rate that the Debtor intends to pay on the bifurcated secured claim.  The "Notes" in Section I, Part B indicate that the Debtor intends to pay the sum of $20,125, the prepetition arrearage amount, at a four percent (4%) interest rate through the plan.  For the balance of the secured claim, the Debtor indicates that she is going to make payments in the amount of $1,726.53 for the remaining 318 months of the mortgage.  The Debtor does not state an interest rate.  The Creditor suggests that based on the amount that the Debtor proposes to pay per month and the length of time over which she proposes to make these mortgage payments, she

---

($20,125.00) dollars at four (4%) percent interest.  One thousand seven hundred twenty-six and 53/100 ($1,726.53) dollars for the remaining three hundred eighteen (318) months of the mortgage which shall include principal and interest only and the Debtor shall pay the insurance and real estate taxes on said property.  Upon confirmation of this Plan and the Debtor satisfying its terms, the mortgagee [sic] adjust its records and amortization schedule for the remaining months.

4

is proposing an interest rate of less than 1.4% per annum.  The Creditor further explains that if the Debtor intends to use the four percent (4%) interest rate as she proposes for the prepetition arrears on the secured portion to be paid outside of the plan, then the monthly mortgage payments should be $2,348.38.[8]  The Debtor does not provide any basis in the plan for these possible interest rates.  Nor does the Debtor apply the factors set forth in *Till*.  The Debtor suggests in her response that the *Till* factors should be considered in determining the interest rate on the secured portion of Creditor's claim.  However, the proposed plan fails to state, in clear and unequivocal language, the interest rate that the Debtor proposes to apply to the secured portion of the Creditor's claim.  Nor does the plan provide any language that allows the Court or the Creditor to determine how the *Till* factors were used to reach such a proposed interest rate.  This alone is a basis for the Court to sustain the Creditor's objection to confirmation.

As the Creditor argues, the language of the plan is unclear and self-contradictory, as a result of which the Court is unable to determine how the Debtor intends to treat the Creditor's claim.  Therefore, the Court sustains the Creditor's Objection.

The Court does not reach the other arguments raised by the Creditor or the Debtor; the Court need not reach these issues in order to sustain the Creditor's objection.   Until the language of the plan proposes one option for the treatment of the Creditor's bifurcated secured claim, it would be a waste of judicial resources to hypothesize whether the treatment is permissible under applicable case law or the Bankruptcy Code.

---

[8]  The Creditor attached to its objection to confirmation of plan an amortization table that supported this monthly mortgage payment if the Debtor intended a four percent (4%) interest rate.

5

**Conclusion**

For the reasons set forth above, the court will by separate order (i) sustain the Creditor's objection to confirmation of the first amended Chapter 13 plan and (ii) order the Debtor to file a Second Amended Chapter13 Plan within fourteen days of the date of this order.

Date: August 24, 2010

                              Frank J. Bailey
                              United States Bankruptcy Judge