UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| In re<br><br>MARIA V. PIRES,<br><br>                         Debtor | Chapter 13<br>Case No. 09-18708-FJB |
|---|---|

### MEMORANDUM OF DECISION ON OBJECTIONS TO CHAPTER 13 PLAN

The chapter 13 debtor, Maria V. Pires ("the Debtor"), seeks confirmation of a plan that, by virtue of its treatment of the secured claims of two mortgagees, is a variant of the "hybrid plan" first sanctioned in this district in *In re McGregor*, 172 B.R. 718 (Bankr. D. Mass. 1994). Most notably, it would bifurcate the mortgagees' claims and, with authority that it would have the court find in 11 U.S.C. § 1322(b)(5), pay the secured portions over a period longer than the five-year duration of the plan. The mortgagees oppose confirmation, arguing first that *McGregor* was wrongly decided—*i.e.*, that Chapter 13 does not permit hybrid plans—and, in the alternative, that this particular hybrid plan fails even under *McGregor* and its progeny. For the reasons set forth below, the Court agrees with the mortgagees that § 1322(b)(5) does not authorize the payment of a modified secured claim over a period longer than the term of the plan, and therefore that hybrid plans are not a valid option in Chapter 13.

**FACTS AND PROCEDURAL HISTORY**

On September 11, 2009, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing the present case. At the time, she owned two multifamily dwellings.

The first, located at 26 Everett Street, Somerville, Massachusetts, is subject to a first position mortgage held by The Bank of New York Mellon as Trustee for the Certificateholders CWALT, Inc.,

Alternative Loan Trust 2006-J1 Mortgage Pass-Through Certificates, Series 2006-J1 ("BNY Mellon").[1] This mortgage in turn secures a promissory note on which the Debtor was indebted as of the date of the bankruptcy filing in the amount of $533,583.39.[2] This amount includes an arrearage as of the same date in the amount of $20,125.24.  The Debtor is obligated under the promissory note to make monthly payments of principal and interest in the amount of $3,318.72; interest accrues at the fixed rate of 6.25 percent, and the note matures on November 1, 2035.  The Everett Street property is a three-family residence; the Debtor occupies one of the apartments as her primary residence and rents out the other two.  The Debtor has moved for and obtained an order declaring that the value of this property is no more than $460,000 and that BNY Mellon's mortgage is modifiable under 11 U.S.C. § 1322(b)(2).

The Debtor's second property is located at 72 Rush Street, Somerville, Massachusetts.  The Rush Street property is encumbered by a first mortgage held by U.S. Bank, N.A., as Trustee ("U.S. Bank"), and serviced by America's Servicing Company.[3] This mortgage secures a promissory note, also now held by U.S. Bank, on which the amount owed as of the date of the Debtor's bankruptcy filing was $512,938.87; this sum includes an arrearage as of the same date of $27,756.42.  The promissory note requires monthly payments of principal and interest; the interest rate adjusts but may never be less than 8.35 percent.  The monthly payment amount varies with the interest rate.  The promissory note matures on April 1, 2036.  The Rush Street property is a two-family residence; the Debtor rents out both apartments.  The Debtor has moved for and obtained an order declaring that the value of this property

---

[1] The mortgagors are the Debtor and a Fernando Pires.  The Debtor is the sole obligor on the promissory note.

[2] Each mortgagee has filed a proof of claim in this case and has attached to it a copy of its mortgage and promissory note.  The Debtor has not objected to either proof of claim, and the time to do so has passed.  I therefore deem established the claim and arrearage amounts stated in the proofs of claim.  MLRB App. 1, Rule 13-13(e).

[3] The mortgagors are the Debtor and Fernando Pires.  In this instance, Fernando Pires is the sole obligor on the promissory note.

2

is no more than $375,000 and that U.S. Bank's secured claim may be modified under 11 U.S.C. § 1322(b)(2).

The plan presently before the Court is the Debtor's third in this case. The original was quickly superseded by the First Amended Chapter 13 Plan, to which BNY Mellon objected. Though that plan too relied on *McGregor* and was objected to for that reason, its essential features were unclear and internally inconsistent, and the Court denied confirmation for that reason alone. The Debtor then filed the present plan, her Second Amended Chapter 13 Plan, and BNY Mellon and U.S. Bank have objected to its confirmation.

The plan calls for the Debtor to make payments of $1,003.00 per month for 60 months to the chapter 13 trustee. With these funds, the trustee would pay the arrearage portions of the claims of BNY Mellon and U.S. Bank, two priority tax claims totaling $2,334.58, an administrative claim for Debtor's counsel's fee of $2,000.00, the chapter 13 trustee's fee, and a one percent dividend on nonpriority unsecured claims. The Debtor estimates that nonpriority unsecured claims will total $193,700.00, $192,000 of which would be comprised of the unsecured portions of the claims of BNY Mellon and U.S. Bank.

The plan would bifurcate the claims of BNY Mellon and U.S. Bank into secured and unsecured claims. As indicated in the previous paragraph, with respect to the unsecured portions, each mortgagee would be paid a one percent dividend through the trustee. With respect to the secured portions, each mortgagee would receive two separate streams of payments. First, as indicated above, each mortgagee would receive payments through the trustee that, in total, would equal the amount of its prepetition arrearage. Second, each would receive equal monthly payments directly from the Debtor. These payments would pay the balance of each mortgagee's secured claim—that is, its secured claim minus its arrearage—over a period equal to the remaining term of its mortgage loan with interest at 4 percent per

3

annum. Therefore, the monthly payments from the Debtor to each mortgagee would be in the amount necessary to amortize the balance of the mortgagee's secured claim at 4 percent per annum over the remaining term of the mortgagee's loan.[4] This formula does and is intended to reduce the Debtor's monthly payments to each mortgagee to amounts that are less than the monthly payments required by the mortgagee's respective promissory notes.

The mortgagees' objections to the plan and the Debtor's responses are as follows. First, both mortgagees argue that *McGregor* was wrongly decided. They contend that interpretation of 11 U.S.C. § 1322(a)(5) as permitting (i) modification of the rights of a secured creditor and (ii) payment of that creditor's modified secured claim over a term longer than the life of the plan is, in both respects, inconsistent with § 1322(a)(5) itself and with other provisions of the Bankruptcy Code, most notably §§ 1325(a)(5)(B) and 1322(d). Hybrid plans, they argue, simply are not a valid option in chapter 13. The mortgagees argue that a debtor wishing to retain the mortgaged property has two options with respect to the mortgagee's secured claim: under § 1322(b)(5), the debtor may cure the arrearage portion of that claim over the life of the plan and continue to make the payments required by the mortgage, essentially leaving the mortgagee's rights unimpaired; or, under § 1325(a)(5)(B), the debtor may modify the mortgagee's rights by paying the mortgagee a stream of payments that (i) has a present value equal to the amount of the secured claim and (ii) is completed during the statutorily-limited term of the plan. The mortgagees take the position that there is no middle or hybrid option, that § 1322(b)(5) is not an

---

[4] The plan does not specify the amount of the monthly payment that the Debtor would make directly to each mortgagee. Rather it provides formulae by which the Debtor attempts to indicate how these amounts might be determined. For BNY Mellon, the plan states: "The Debtor further proposes that the Debtor may pay the secured claim outside the Plan at a fixed rate of interest of 4% on the outstanding secured claim value of $439,875.00 over the remaining months of the mortgage, or in other word, until maturity." For U.S. Bank, the plan uses slightly different language: "The Debtor proposes . . . to pay the sum of $347,243.58 at an annual rate of 4% over the remaining months of the mortgage or, in other words, until maturity."

alternate source of authority for modifying a secured claim. In response, the Debtor simply cites *McGregor* and its progeny.[5]

Second, and in the alternative, both mortgagees argue that even under *McGregor*, the present plan fails because it does not propose to "maintain" the payments payable to the mortgagees. Here they rely on *McGregor* itself for the proposition that in order to qualify for the hybrid option, a plan must comply with § 1322(b)(5)'s requirement of "maintenance of payments," which *McGregor* states means payment in accordance with the debtor's obligations under the promissory note and mortgage. The present plan would modify those payments and therefore cannot be justified under § 1322(b)(5). The Debtor responds that § 1322(b)(5) does not say what is meant by "maintenance of payments," and that the Court should confirm the plan as long as payments are maintained that pay the secured claim with interest at a rate that satisfies the standard established by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) and implicitly 11 U.S.C. § 1325(a)(5)(B)(ii), which *Till* explicates. Maintenance of payment, she contends, does not mean or require maintenance of the payments required by the mortgage loan.

Third, the mortgagees fault the plan for reducing the portion of the secured claim that the debtor must pay by the entire amount of the arrearage instead of just the part thereof that constitutes repayment of principal. In allocating the other components of the arrearage (interest, late charges, and other fees) to the secured claim, the Debtor is proposing a treatment of the mortgagees' claims that does not comport with those authorities that sanction hybrid plans and have addressed this issue. Here they cite the opinion of Judge Joan Feeney of this district in *In re Brown*, 175 B.R. 129 (Bankr. D. Mass.

---

[5] *See In re McGregor*, 172 B.R. 718 (Bankr. D. Mass. 1994); *In re Brown*, 175 B.R. 129 (Bankr. D. Mass. 1994); *In re Murphy*, 175 B.R. 134 (Bankr. D. Mass. 1994); *FNMA v. Ferreira (In re Ferreira)*, 223 B.R. 258 (D. R.I. 1998); *In re Kheng*, 202 B.R. 538 (Bankr. D. R.I. 1996); and *In re Veliz*, 2009 WL 3418638 (Bankr. D. R.I. 2009); *In re Plourde*, 402 B. R. 488 (Bankr. D. N.H. 2009).

5

1994) and the treatise on which she relied, Keith M. Lundin, *Chapter 13 Bankruptcy*, at ¶ 4.55, p. 4-103 (Wiley 1994).

**DISCUSSION**

This case presents two issues: whether a hybrid plan is a valid option under chapter 13 of the Bankruptcy Code; and, if so, whether either of two features of this hybrid plan—its modification of the contractually-required stream of payments to the mortgagee and its treatment of the entire arrearage as secured debt—nonetheless prevents its confirmation. I begin by addressing the first and note that, although the issue has been addressed often among bankruptcy courts in this circuit, there is no binding authority on the issue in this circuit. In the only circuit-level case on the issue, the Ninth Circuit Court of Appeals ruled against the hybrid option. *In re Enewally*, 368 F.3d 1165 (9th Cir. 2004) (a debtor may not use § 506(a) in combination with § 1322(b)(5) to reduce the secured claim and repay it over a period longer than the plan term). The most thorough treatment of the issue I find in *In re Koper*, 284 B.R. 747 (Bankr. D. Conn. 2002).

Chapter 13 offers two distinct and well-established options for treatment of secured claims, especially mortgage loans. The first is known colloquially as a "cure and maintain plan" for its adherence to 11 U.S.C. § 1322(b)(5). It is available as to any secured claim on which the last payment is due after the final payment on the plan. Under this option, the debtor may cure the prepetition arrearage on its mortgage loan but otherwise leave unimpaired the payment rights of the mortgagee, such that payments under the mortgage loan are maintained during the term of the plan. Upon completion of the plan, the prepetition default is deemed cured, and the relationship between the parties is governed entirely by the promissory note and mortgage without modification. Payments under the mortgage loan then continue in the ordinary course, not because the plan so dictates but

because the contractual rights between the parties are, except in one limited respect, left unimpaired. The rights of the mortgagee are affected by the plan only in this one respect: that notwithstanding the contractual terms between the parties, the debtor is permitted to cure the prepetition arrearage through the plan. This option is expressly authorized by § 1322(b)(5), which states that

> the plan may . . . notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

The second option is known as the "modification" or "lien stripping" option and is permitted by 11 U.S.C. § 1322(b)(2) but only as to secured claims other than those "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Under a plan of this kind, the debtor modifies the rights of the secured creditor more extensively by (i) bifurcating that claim into secured and unsecured claims in accordance with 11 U.S.C. § 506(a), (ii) paying the unsecured claim a dividend, usually less than 100 percent, through the trustee over the duration of the plan, which may not exceed five years, (iii) providing that the secured creditor retains the lien securing its secured claim until the earlier of entry of discharge or payment in full of the underlying debt as determined under nonbankruptcy law, as required by 11 U.S.C. § 1325(a)(5)(B)(i), and (iv) paying the secured claim—also through the trustee and within the term of the plan—with a stream of equal monthly payments whose value, as of the effective date of the plan, is not less than the allowed amount of the secured claim, as required by 11 U.S.C. § 1325(a)(5)(B)(ii) and (iii)(I). For two reasons, this option is seldom used: § 1322(d) requires payment of the secured claim in full within a period of not more than five years, and few chapter 13 debtors can afford the payments required to accomplish this; and § 1322(b)(2) makes

this option inapplicable to claims secured only by a security interest in real property that is the debtor's principal residence.

Enter the hybrid option, which is employed to circumvent the modification option's five-year limitation on payment of the secured claim.[6] A hybrid plan is so-called because it is a modification plan that borrows features of the cure and maintain plan in an attempt to justify, under § 1322(b)(5), payment of the modified secured claim over a period longer than the term of the plan. In structure, a hybrid plan, like the present plan, (i) modifies the rights of a secured creditor by bifurcating its claim into secured and unsecured claims in accordance with 11 U.S.C. § 506(a), (ii) pays the unsecured claim a dividend—again, usually less than 100 percent—through the trustee over the duration of the plan, (iii) provides that the secured creditor retains the lien securing its secured claim until the payment in full of only the secured claim, (vi) cures the secured creditor's prepetition arrearage by payments through the trustee during the term of the plan, and (v) pays the secured claim (or at least so much of it as is not paid by curing the arrearage) directly and over a period longer than the duration of the plan by maintaining the payments required by the prepetition agreement between the debtor and secured creditor until and only until those payments, in the aggregate, fully amortize the secured claim in accordance with 11 U.S.C. § 1325(a)(5)(A)(ii).

The cases that have sanctioned hybrid plans have uniformly construed § 1322(b)(5) as permitting maintenance of payments on the secured claim alone and as authorizing such payment to continue not only during the term of the plan but also thereafter until the total of such payments gives the creditor its due for the secured portion of its claim. Under this reading, § 1322(b)(5) authorizes more than maintenance of payments on an unimpaired claim; it authorizes modification of the claim.

---

[6] This Court has not seen it employed to circumvent the prohibition in § 1322(b)(2) on modification of claims secured only by a security interest in real property that is the debtor's principal residence; and that prohibition is not applicable in this case.

8

Proponents of this view find support in § 1322(b)(5) itself, where it states that "the plan may . . . provide for the . . . maintenance of payments while the case is pending *on any . . . secured claim*." 11 U.S.C. § 1322(b)(5) (emphasis added).  Under § 506(a), a "secured claim" is not merely the claim that is secured but that claim "to the extent of the value of such creditor's interest in the estate's interest such property [ i.e., the property of the estate that is subject to the creditor's lien]."  11 U.S.C. § 506(a).

Does the emphasized language from § 1322(b)(5) therefore authorize a form of modification of secured claims?  This reading gives rise to a number of difficulties, and therefore it cannot be deemed unambiguous.  I find the difficulties insuperable.  First, nothing in § 1322(b)(5) actually permits payments on a secured claim to extend beyond the term of the plan.  It permits only "maintenance of payments *while the case is pending*."  But proponents of hybrid plans do not contend, and in most instances could not plausibly contend, that the contractual payments, maintained only over the duration of the plan, would be sufficient to fully amortize the secured claim in accordance with 11 U.S.C. § 1325(a)(5)(A)(ii).[7]  "Maintenance of payment while the case is pending" plainly was not intended as a formula, akin to that in § 1325(a)(5)(A)(ii), for assuring that the holder of a secured claim is paid value equivalent to its claim.  In order for § 1322(b)(5) to serve as a mechanism for payment of a modified secured claim, it must be construed as authorizing payment over a term longer than the plan's.  This it simply does not do.  However, when § 1322(b)(5) is construed as merely permitting continuation during the plan of payments on an unmodified obligation, there is no difficulty.  Under that view, § 1322(b)(5) need not specify that payments will continue after the term of the plan because, in that case, the payments would continue not pursuant to the Bankruptcy Code or the plan but pursuant to the

---

[7] In fact, they propose hybrid plans precisely because they cannot pay the secured claim during the term of the plan.

unimpaired prepetition agreement between the parties. In short, § 1322(b)(5) does not authorize payments beyond the plan term; rather it merely leaves unimpaired the agreement under which payments will continue.

Second, § 1322(b)(5), no less than § 1322(b)(2), is subject to the requirement in § 1322(d) that payments on the plan be completed in no more than five years. 11 U.S.C. § 1322(d)(1) and (2) (both providing that a plan may not provide for payments over a period that is longer than five years). *In re Legowski*, 167 B.R. 711, 715-16 (Bankr. D. Mass. 1994) (when the payment rights of the mortgagee are modified, § 1322(c) [an earlier version of what is now § 1322(d)] and § 1325(a)(5) jointly require that payment be made and completed over the life of the plan); *In re Koper*, 284 B.R. at 753-54 ("Even if Section 1322(b)(5) could be construed to permit the modification inherent in bifurcation, it would not change this Court's analysis [rejecting hybrid plans] since subsection (b)(5), like subsection (b)(2), is subject to the five-year plan limitation of subsection (d)."). As the court explained in *Koper*:

> [T]his Court can identify no principle of statutory construction which would permit it to distinguish subsection (5) from all other enumerated subparts of Section 1322(b) with reference to the effect of the mandate of subsection (d). *McGregor* and its progeny focus, if at all, on the fact that subsection (b)(5), by its terms, addresses claims "on which the last payment is due after the date on which the final payment under the plan is due" (hereafter, the "Long Term Debt Reference"). In essence, these authorities interpret the Long Term Debt Reference as a license for long term treatment, i.e. treatment which extends beyond the permissible duration of a plan. Yet this court can formulate no reasonable construction of subsection (b)(5) under which the Long Term Debt Reference could be read as a substantive license. Instead, that reference merely identifies the type of claim to which a "cure and maintain" plan can be addressed.

*In re Koper*, 284 B.R. at 754. If any doubt should remain on this question, "the prefatory language of § 1322(b)—'[s]ubject to subsections (a) and (c) of this section, the plan may . . .'—explicitly renders *all* of its enumerated subparts subject to the time constraint of Section 1322(d)." *Id*. *Koper* further explained:

> Although the juxtaposition of the mandatory language of Section 1322(d) and the permissive tenor of Section 1322(b) would itself compel

10

> a construction subjecting the subsection (b) provisions to the backstop of subsection (d), the ''subject to'' prefatory language of subsection (b) removes any doubt in that regard. Although that language—''[s]ubject to subsections (a) and (c) of this section, the plan may . . .'' (hereafter, the ''Prefatory Language'')—appears not to refer to subsection (d), this Court concludes that Congress intended otherwise. The Prefatory Language remained unchanged despite changes to Section 1322 brought about by the Bankruptcy Reform Act of 1994 (hereafter, the ''1994 Amendments''). The 1994 Amendments created a new subsection (c) and moved the five-year plan limitation language of old subsection (c) to a new subsection (d) without altering the cross-reference of the Prefatory Language. This Court concludes from all the circumstances that the cross-reference to subsection ''(c)'' in the Prefatory Language was intended by Congress to be changed to ''(d)'' at the time of the 1994 Amendments, but was left unaltered by virtue of a drafting or codification error.

*Id*. at 752 n.10. The conclusion is inescapable that payments on a modified claim, even if authorized by § 1322(b)(5), must be completed within the term of the plan.

Third, construed as a modification provision, § 1322(b)(5) would permit as to "a claim secured only by a security interest in real property that is the debtor's principal residence" precisely what § 1322(b)(2) expressly prohibits as to such claims: modification. Section § 1322(b)(5) begins with the words "notwithstanding paragraph (2) of this subsection." That which it permits is therefore permitted without regard to the antimodification exception in paragraph (2); this is why § 1322(b)(5) can be and so often is used with respect to mortgages on principal residences. By the antimodification exception in paragraph (2), however, Congress clearly signaled an intent to protect such mortgages from modification. The proposed construction of § 1322(b)(5) would have Congress giving with the one hand precisely what it took away with the other, a strange result.[8] More likely Congress did not intend for § 1322(b)(5) to serve as authority for modification.

---

[8] This end run around the antimodification exception would likely be of significant consequence. Because modification through a hybrid plan is no more onerous than a simple cure and maintain plan—both require monthly payments in the same amount, only the modification payments end sooner—any

11

Fourth, if § 1322(b)(5) were construed as the debtor proposes, it would authorize payment of a mortgagee's claim not in two parts but three: the secured claim, the unsecured claim, and the arrearage. As the matter before me demonstrates, this gives rise to a need to apportion the arrearage payments between the secured and unsecured claims: to which should payments on the arrearage be credited? Though courts have opined on the issue, there is no obvious answer to the question. An arrearage is simply the overdue portion of the debt; nothing in the definition of an arrearage makes it necessarily secured or unsecured. The fact that the drafters of § 1322(b)(5) did not supply an answer to this obvious issue, together with the further oddity of payment of the claim in three parts, I take as evidence that the drafters did not intend for § 1322(b)(5) to authorize hybrid treatment.

For all of these reasons, I conclude that § 1322(b)(5) does not permit the payment of a modified secured claim over a period longer than the term of the plan. Having so concluded, I need not address the mortgagees' alternate arguments. A separate order will enter denying confirmation.

Date: November 7, 2011

_____
Frank J. Bailey
United States Bankruptcy Judge

---

debtor who can afford a cure and maintain plan could, when the value of the mortgaged property is less than the amount of the mortgage debt, as feasibly opt for a modification instead.